# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
v. ) Case ID. No.: 1901000972
)
)
DERRO SMITH, )
Defendant. )

## ORDER

Submitted: December 8, 2020
Decided: March 19, 2021

*Upon Consideration of Defendant's Motion to Withdraw Guilty Plea*,
**DENIED**.

Matthew C. Buckworth, Esquire and Marc C. Petrucci, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State*.

Raymond D. Armstrong, Esquire, Office of Defense Services, Wilmington, Delaware. *Attorney for Defendant*.

**MEDINILLA, J.**

**AND NOW TO WIT**, this 19th day of March, 2021, upon consideration of Defendant Derro Smith's ("Defendant") Motion to Withdraw Guilty Plea, the State's Response, oral argument, the corresponding evidentiary supplement, and the record in this case, it appears to the Court that:

1. The case against Defendant involved an allegation of a shooting on December 23, 2018 that struck the victim in the right leg on the 800 block of East 13th Street in Wilmington. Defendant was alleged to have assaulted the victim in the presence of the victim's wife and child. Though neither witness provided a name of the shooter, both provided Defendant's nickname.

2. On March 4, 2019, Defendant was indicted on charges of Assault First Degree, Possession of a Firearm During the Commission of a Felony (PFDCF), Possession of a Firearm by a Person Prohibited (PFBPP), Possession of Ammunition by a Person Prohibited (PABPP), Carrying a Concealed Deadly Weapon, and Endangering the Welfare of a Child.

3. On July 15, 2019, at final case review, the State extended Defendant a plea offer to one count of Assault Second Degree and PFDCF. The offer carried a minimum mandatory sentence of five years at Level V and Defendant rejected the offer.[1]

---

[1] D.I. 20.

4. Trial was scheduled to begin on November 19, 2019, at which time the State extended a different plea offer. It offered to drop the firearm charge in exchange for Defendant's agreement to plead guilty to one count of Assault First Degree, with the State recommending a sentence of seven years at Level V and Defendant seeking no less than five years.[2]

5. With the removal of the firearm and its mandatory three-year minimum, Defendant was informed that although the Level V recommendations ranged between five (Defendant) and seven (State) years, the Court could exercise its discretion and sentence Defendant to something less, where the legally required minimum mandatory incarceration period was now two years.[3] The Court gave Defendant time to confer with Natalie Woloshin, Esquire (Trial Counsel) who confirmed after doing so that Defendant elected to accept the offer and resolve his matter through this new plea agreement.[4]

6. The Court conducted a plea colloquy and found Defendant entered the plea knowingly, voluntarily, and intelligently.[5] Though hesitant when asked whether he was satisfied with Trial Counsel, he ultimately expressed to the Court he

---

[2] Plea Transcript November 19, 2019, at 3:9-4:12 [hereinafter Plea Transcript].
[3] Plea Transcript, at 6:14-21.
[4] *See id.* at 7:14-9:5.
[5] *Id.* at 18:23-19:4.

believed that Trial Counsel had done what she could reasonably do for him.[6] The Court then accepted his plea and scheduled the matter for sentencing.[7]

7.    On November 22, 2019, Defendant filed a *pro-se* motion to withdraw his plea asserting ineffective assistance of counsel.[8] On January 28, 2020, Trial Counsel filed this Motion to Withdraw Guilty Plea and to Withdraw as Counsel.[9] The State opposed the Motion to Withdraw Defendant's Guilty Plea.[10] The Court granted the Motion to Withdraw as Counsel.[11] Through the Office of Defense Services, Raymond Armstrong, Esquire was appointed to represent Defendant but the matter could not be scheduled due to Defendant's various attempts to retain private counsel between January and May 2020.[12] Mr. Armstrong (Defense Counsel) eventually returned as Defendant's representative.

---

[6] *Id.* at 19:8-17.
[7] *Id.* at 20:14-19.
[8] D.I. 51.
[9] D.I. 58.
[10] D.I. 70.
[11] D.I. 76.
[12] On January 29, 2020, Trial Counsel filed a Motion to Withdraw Defendant's Guilty Plea and to Withdraw as Counsel. The Court granted the Motion with respect to Trial Counsel's withdrawal from the case. On March 16, 2020, Trial Counsel received a letter from Defendant stating that he had retained Andy Witherell, Esquire. On March 25, 2020, Mr. Witherell notified the Court that he would not be entering his appearance on Defendant's behalf. That same day, Raymond Armstrong, Esquire, notified the Court he would be representing Defendant upon receipt of Defendant's file. On April 15, 2020, Defendant notified Mr. Armstrong that he had retained private counsel. On April 28, 2020, Aman Sharma, Esquire, filed a substitution of counsel with the Court. On May 5, 2020, Mr. Sharma filed a second substitution of counsel. On May 14, 2020, Mr. Sharma withdrew his representation of Defendant prior to the Court approving his substitution of counsel requests.

8. On July 16, 2020, the State filed its Response to Defendant's Motion to Withdraw.[13] Oral arguments were scheduled for August 14, 2020 but had to be rescheduled due to audio technical difficulties via Zoom. On September 25, 2020, after oral arguments, Defense Counsel requested an opportunity to question Trial Counsel either via a deposition or an evidentiary hearing. The Court agreed. The State requested an in-person evidentiary hearing in lieu of deposition, scheduled on December 8, 2020.

9. On December 3, 2020, Defense counsel informed the Court that Defendant did not wish to elicit the testimony of Trial Counsel and refused to waive his Attorney-Client privilege.[14] The Court did not order Trial Counsel to testify.[15] Without objection from the State, Defense Counsel instead introduced sealed documents from Trial Counsel's file in support of his position. This matter is ripe for disposition.

---

[13] D.I. 70.

[14] To address scheduling issues for the evidentiary hearing, namely whether Trial Counsel could be called to testify, the State took the position through electronic communications that Defendant had waived the attorney-client privilege by challenging his counsel's performance in his Motion to Withdraw, citing the Delaware Lawyer's Rules of Professional Conduct 1.6(b)(5).

[15] At the hearing, Trial Counsel informed the Court that she had been advised by her own attorney not to testify unless Defendant agreed to waive the privilege, or the Court ordered her to do so. Defendant reiterated to the Court that he would not waive his privilege. Since it was Defendant who originally sought to call Trial Counsel as a witness in support of his Motion, the Court accepted and honored his decision to simply change his mind. The Court did not need to consider whether Defendant waived attorney-client privilege.

**STANDARD OF REVIEW**

10.    There is no absolute right to withdraw a guilty plea.[16]  Under Superior Court Criminal Rule 32, "[i]f a motion for withdrawal of a plea of guilty . . . is made before imposition . . . of sentence . . . the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."[17]  Whether such a motion is granted is within the sound discretion of the Court.[18]  The defendant carries the burden of demonstrating a fair and just reason to permit withdrawal[19] and "that burden is substantial."[20]  It is further the law that such a motion will only be granted if the Court finds "[t]he guilty plea was not voluntarily made, or that it was entered by reason of a mistake of the defendant as to his legal rights."[21]

11.    Following *McNeill v. State,* in determining whether withdrawal would be fair and just, the court considers the following factors:

> (1) the procedure of the colloquy;
> (2) whether the plea was intelligent, knowing, and voluntary;
> (3) whether the defendant has a basis to assert legal innocence;
> (4) whether the defendant had adequate legal counsel throughout the proceeding; and,

---

[16] *Barksdale*, 2015 WL 4676895, at *3 (quoting *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005)).

[17] DEL. SUPER. CT. CRIM. R. 32(d).

[18] *McNeill v. State*, 810 A.2d 350, 2002 WL 31477132, at *1 (Del. Nov. 4, 2002) (TABLE).

[19] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007).

[20] *State v. Barksdale*, 2015 WL 5676895, at *3 (Del. Super. Sept. 14, 2015) (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d. Cir. 2002)) (internal quotations omitted).

[21] *Brown v. State, 250 A.2d 503, 504 (1969)*

5

(5) whether the State would be prejudiced or the court would be unduly inconvenienced if the defendant were permitted to withdraw his guilty plea.[22]

The Court does not conduct a balancing test of these factors, rather "[c]ertain of the factors, standing alone, will themselves justify relief."[23]

## CONTENTIONS

12. Defendant asserts the following grounds in support of his Motion: (1) "Ineffective assistance of counsel" – Defendant argues that Trial Counsel should have had a private investigator speak to the alleged victim; (2) "Conflict of interest" – Defendant asserts there was a conflict between him and Trial Counsel because Trial Counsel spoke with the alleged victim regarding the charges; (3) Duress – Defendant argues he felt pressured by Trial Counsel to take the plea; and (4) Defendant asserts he is innocent of all charges.[24]

## DISCUSSION

### A. No Procedural Defect

13. As to the first factor, Defendant admits that there was no defect.[25]

---

[22] *McNeill*, 2002 WL 31477132, at *1; *see also State v. Friend*, 1994 WL 234120, at *2 (Del. Super. May 12, 1994) (citing *U.S. v. Cannistraro*, 734 F. Supp. 1110 (D. N.J. 1990); *U.S. v. Jordan*, 759 F. Supp. 902 (D. D.C. 1991); *Commonwealth v. Hollenbach*, 544 A.2d 471 (Pa. Super. 1988)).

[23] *Patterson*, 684 A.2d at 1239.

[24] Defendant's Motion to Withdraw Guilty Plea, ¶ 11 [hereinafter Def's Mot.].

[25] *Id.* ¶ 15.

**B. Plea Was Intelligent, Knowing, and Voluntary**

14.    Defendant claims he was under duress and pressured by Trial Counsel to enter his plea.[26]  He further argues the plea was not knowing and voluntary because Trial Counsel created a conflict of interest when she spoke with the alleged victim regarding the charges.[27]  Neither contention supports his basis for relief.

15.    Defendant's statements before the Court during a guilty plea colloquy are "presumed to be truthful."[28]  Such statements pose a "formidable barrier in any subsequent collateral proceedings."[29]  To overcome this barrier, Defendant must show by clear and convincing evidence that his previous testimony and the answers on the Truth-In-Sentencing (TIS) Form were incorrect at the time given.[30]

16.    The Court asked Defendant if he believed he had had adequate time to discuss his decision with Trial Counsel.[31]  Defendant responded "Yes, ma'am. I appreciate it."[32]  During the colloquy, Defendant was asked if he was entering the plea knowingly, voluntarily, and intelligently, Defendant responded, "I enter this

---

[26] *See id.* ¶¶ 11(c), 16.
[27] *See id.* ¶¶ 11(b), 16.
[28] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) (citing *Davis v. State*, Del. Supr., No. 157, 1992, Walsh, J., 1992 WL 401566 (Dec. 7, 1992) (ORDER); *Bramlett v. A.L. Lockhart*, 8th Cir., 876 F.2d 644, 648 (1989)).
[29] *Id.* (quoting *Voytik v. United States*, 8th Cir., 778 F.2d 1306, 1308 (1985)) (internal quotations omitted).
[30] *See Somerville*, 703 A.2d at 632 (citing *Fullman v. State*, Del. Supr., No. 268, 1988, Christie, C.J. (Feb. 2, 1988) (ORDER)).
[31] Plea Transcript at 9:12-14.
[32] *Id.* at 9:15-16.

plea voluntarily, ma'am."[33]  He further stated that no one had forced him to enter into the plea agreement.[34]  Defendant presents no evidence to overcome the heavy presumption of truthfulness that his statements carried nor is there anything in the record to suggest that Defendant was untruthful at the time he entered his plea.

17.    That Trial Counsel spoke with the alleged victim about the statements he made to police following the alleged incident does not create a conflict of interest between Defendant and Trial Counsel.[35]  Nor is it enough to show that Defendant's plea was not made knowingly, voluntarily, and intelligently.  Therefore, the Court finds, as it did at the time the plea was entered into, that Defendant's plea was made knowingly, voluntarily and intelligently.

## C.    No Basis to Assert Legal Innocence

18.    Once a defendant admits to an offense during a guilty plea, there must be some support in the record for that defendant to assert innocence.[36]  Conclusory statements are not enough to provide a defendant "with an adequate legal basis to

---

[33] *Id.* at 18:23-19:4.

[34] *Id.* at 17:17-19.

[35] To succeed on his conflict of interest claim Defendant is required to "(1) prove by clear and convincing evidence there is a conflict of interest in the first place; and (2) demonstrate how the conflict will prejudice the fairness of the proceeding." *Hitchens v. State*, 931 A.2d 437, 2000 WL 2229020, at *2 (Del. July 26, 2007) (TABLE) (citations omitted).  Defendant failed to provide any evidence that Trial Counsel's discussion with the victim created a conflict let alone that it prejudiced the fairness of the proceeding.  If anything, as Trial Counsel's notes from the meeting show, the discussion was meant to benefit Defendant.

[36] *State v. Rodriguez*, 2001 WL 209863, at *4 (Del. Super. Feb. 26, 2001) (citing *Russel v. State*, Del. Supr., No. 509, 1998, Veasey, J., (June 2, 1999), Order at 6).

assert his innocence."[37] Though he states that he has a basis to assert his legal innocence, he does not state what it is.[38] Rather, his claim is that Trial Counsel should have done more with the victim's recantation to get his charges dismissed.[39] This claim is insufficient.

19. A review of Trial Counsel's materials reflects what both sides already knew on the day of trial when the new offer was extended: the victim recanted and expressed a different narrative about whether it was Defendant who shot him. The State was fully aware on the day of trial when it extended its new plea offer that, according to Trial Counsel, the victim visited her office the week before trial, recanted, and indicated that he did not wish to testify.[40] Yet at trial, the State was ready to offer the testimony of the victim's wife who remained willing to testify that she witnessed Defendant shoot her husband. According to the victim's wife, her husband was scared to testify and wanted to put this behind him yet he did show up at trial prepared to testify.[41] The State indicated it would have used the victim's prior statement to establish its case under 11 *Del. C.* § 3507.[42] On this record, though the recantation would have been difficult for the State, it does not support Defendant's

---

[37] *State v. Gustin*, 2004 WL 3030019, at *3 (Del. Super. Dec. 13, 2004).
[38] *See* Def's Mot. ¶ 17.
[39] *Id.* ¶ 11(a).
[40] *See* State's Response to Motion at 2.
[41] *Id.*
[42] *Id.*

9

assertion of legal innocence as he was aware of this information when he accepted the plea.

**D. Adequate Legal Counsel**

20. As to the fourth factor, Defendant argues that he did not have adequate legal counsel because Trial Counsel was ineffective.[43] The basis of the ineffective assistance of counsel claim is that Trial Counsel "did not have a private investigator speak with the alleged victim and take his statement and did not provide that statement to the prosecutor to get the charges dropped."[44]

21. To succeed on a claim of ineffective assistance of counsel, Defendant must demonstrate: (1) "that trial counsel's performance was objectively unreasonable;"[45] and (2) that if counsel was deficient, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[46] Mere allegations of ineffectiveness are not enough.[47] Counsel "may not be faulted for reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[48] There is a strong

---

[43] Def's Mot. ¶ 18.
[44] *Id.* ¶ 11(a).
[45] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).
[46] *Strickland*, 466 U.S. at 694.
[47] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[48] *State v. Finn,* 2012 WL 1980566, at *4 (Del. Super. May 23, 2012) (citing *Harrington v. Richter,* 562 U.S. 86, 102-110 (2011)).

presumption that a defense counsel's conduct constituted sound trial strategy[49] and Defendant must make and substantiate concrete allegations that overcome this strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[50]

20.    Trial Counsel hired a private investigator to investigate a possible alibi defense for Defendant who determined that Defendant's alibi defense was not viable.[51]  Therefore, the record is clear that Trial Counsel had employed the help of a private investigator.  That on the occasion when victim recanted, he spoke to Trial Counsel instead of the private investigator does not form the basis for an ineffective assistance of counsel claim.  Therefore, the Court finds that Defendant did have adequate legal counsel throughout the proceeding.[52]

---

[49] *Strickland*, 466 U.S. at 694.

[50] *See Salih v. State*, 962 A.2d 257, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008) (TABLE); *see also Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[51] The potential alibi defense revolved around an alleged burglary which had occurred at Defendant's girlfriend's home on the night of the shooting.  Police responded to the burglary, but it took some time for them to arrive.  When the private investigator interviewed Defendant's girlfriend about the burglary, she told him that Defendant, as well as others, were present during the time she was waiting for police to respond.  A review of the sealed documents confirms the basis for why the investigator concluded that Defendant's girlfriend's story was weak, as well as the stories of others he interviewed attempting to establish an alibi for Defendant.

[52] The Court also notes that in his *pro se* motion, Defendant points out that he stated during the plea colloquy he was not satisfied with counsel.  Defendant's answer was not clear as he stated that he was not satisfied and then said he was.  In light of this, the Court asked Defendant to clarify his answer and asked Defendant again: "Are you satisfied that [Trial Counsel] has done what she can for you?" The Defendant answered "Yes, ma'am."  Plea Transcript at 19:8-16.  The Court finds that its clarification and Defendant's affirmative response were sufficient for accepting the plea offer.

11

**E. Prejudice and Inconvenience**

21.    The State claims it would be unduly prejudiced if the Court granted Defendant's motion because this December 2018 case relies heavily on witness testimony.[53]  This Court agrees.  Stale eyewitness testimony at this late date would prejudice the State.  Regardless, Defendant has not shown a fair and just reason for why he should be allowed to withdraw his guilty plea.  Therefore, the Court's ruling would be the same.

22.    Based on the foregoing, the Court finds that Defendant has failed to meet his burden of providing a fair and just reason to withdraw his guilty plea. Therefore, Defendant's motion to withdraw his guilty plea is **DENIED**.  Both sides are to contact the Court to schedule sentencing at their earliest convenience.

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc:    Prothonotary
cc:    Defendant
        Raymond D. Armstrong, Esquire
        Department of Justice

---

[53] State's Response to Defendant's Motion to Withdraw Guilty Plea, D.I. 70, at 9.

12